The next case on the argument calendar is United States v. Henriquez-Castillo Good morning, your honors. I'm Daniel Kaplan. I represent the appellant Yonsi Henriquez-Castillo. I'd like to reserve two minutes of my time for rebuttal, if I may. In United States v. Benitez, this court stated that the Speedy Trial Act would lose all force if the federal government could arrange with the state government to have the state detain a defendant until the federal authorities are ready to file federal criminal charges. That is essentially what happened in this case to Mr. Henriquez-Castillo. Do you need to show collusion? Well, your honor, the case law refers to collusion. The district court imported some case law from a different but similar context about prompt presentment, the Michaud case is discussed. But essentially, Cepeda, Luna, and Benitez, which are the lead cases in this circuit on this specific issue, talk about something in the nature of collusion as in the state custody is a ruse that's undertaken It's a difference between collusion and a ruse. I mean, if you were to look at collusion means they were cooperating, and they were cooperating. Ruse means, and some of the language seems to say that they were cooperating to avoid the Speedy Trial Act as opposed to just cooperating. So which is it? They were cooperating. But were they cooperating with the end of avoiding the Speedy Trial Act as opposed to simply getting him over to the federal government to be prosecuted? I'm sorry. They were certainly cooperating. But were they cooperating with an eye towards avoiding the Speedy Trial Act or just This is a very key point, and I appreciate the fact this has been raised. It would be, in my view, a serious mistake to say that there is no showing that that case law and that principle that's staked out in Cepeda, Luna, and Benitez is satisfied unless there is an overt showing that the only purpose and the express sole underlying impetus behind a federal-state collaboration or cooperation in law enforcement as there was here was to avoid the Speedy Trial Act. In this case, we have something. But the language in the cases does seem to say that, doesn't it? I don't believe it says that has to be the only purpose. I believe that it says that there has to be a showing that the federal government acted with something like an intent to avoid the Speedy Trial Act. All right. So let's suppose that's true. How have you shown that? I cited case law from this Court making the simple point that in juries all over the world, courtrooms all over this circuit, every week, month, whatever, in criminal cases, there is a boilerplate jury instruction that this Court approves of which says to juries, you can find the defendant guilty making this simple logical inference. A person intends the natural and probable consequences of his deliberate acts. Now, the government manages to use that common-sense principle against criminal defendants all the time. I am simply suggesting that this Court should apply the same common-sense principle to the actions of the agency government. But it seems to be a mens rea sort of a standard. You have to intend not only that they intended the – that – I mean, here, they certainly intended not to get him over to the Feds until some point, but if they really intended to avoid the Speedy Trial Act, it doesn't make any sense. They could have gone ahead with the indictment four days earlier. What was there that gave them an impetus to try and avoid the Speedy Trial Act as opposed to simply get him over there when they got him over there and indict him four days earlier? It makes it that much easier on the Federal Government not to have the constraints of the Speedy Trial Act bind them. And this is a simple point that I want to make, that I want to make sure I get across here. There are other purposes behind Federal-State collaboration. The violent crime impact team approach combines Federal and State resources in a way that may be perfectly terrific from a law enforcement perspective. We're not saying it's a bad idea and it shouldn't be permitted. But when the Federal Government does this with the State authorities, and it's understood between Federal and State authorities, as the district court accepted here, that this is going to be a Federal prosecution, and then weeks fly by where the person's Speedy Trial Act rights are not being observed. They are languishing in State custody under what are now bogus State charges. Well, I mean, maybe if you went back to September 10th, but that seems very difficult. I mean, it seems to me your strongest argument is for the weekend when the Fed – apparently at one point the Fed said keep him there until Monday. So for that period at least, you'd think that he was being kept maybe a thing. Although, as it turns out, they didn't even let him out then. They said they needed to keep him longer. But there was some number of days in which the government, Federal Government said it gave a directive to the State about keeping him there, essentially on behalf of the Federal Government. Well, and we certainly do make that argument on the alternative, Your Honor. That's just three days. It's September 21st to September 28th they finally pick him up. September 21st is when the State says he's completely done. The State charges are no longer hanging over him. But, in fact, they didn't let him out then. Apparently when the Fed said, okay, we're here to get him, they said, no, we're not letting him out. That's right. And apparently what's stated on the record in the hearing is that they had some paperwork. Now, I don't know of any legal warrant to hold somebody in jail when there's no charges over them because there's paperwork. But I think you're asking us to say then that the State is sort of making up the excuse that we have paperwork to do as a way of helping out the Federal Government to allow the Federal Government to indict him later. Well, you might draw that inference from this record. Obviously there's no testimony from a State official saying we made that up. And, in fact, there's no direct testimony that there was paperwork. There was just a statement of the lawyers in front of the judge. The judge accepted that as fact and based the finding on that. But I do want to make a little bit more. I do think that there is a very strong argument for the Speedy Trial Act time running from September 21 when there were no State charges. All there was at this point that was keeping him in on criminal charges was the Federal detainer from the ATF. But I gather that there were officially State charges. In other words, the State had decided they were going to drop him, but they haven't dropped him yet. Up until that time, yes. And after that time either, until the 28th. There were official State charges. But this is a key point going back to September 10. On September 10, the Mesa police officer talked to the ATF person who headed the VCIT Federal State Group Law Enforcement Task Force. And this was accepted as fact by the district judge. From September 10, from that telephone conversation between the Mesa Police Department and the ATF, it was understood this was going to be a Federal felony prosecution. From that point forward, our position is that State custody was essentially a ruse. Wasn't he in State custody for another reason as well? Well, he had other warrants out there. There was apparently an old DUI warrant. And he wasn't charged with that when he was in State custody? There's a reference in the record to he resolved that at some point. And there's no more paperwork or anything else to flesh that out. I see. But that hasn't been offered by the government as justification. I think it's referred to by the court. I would stress again with that that we know from what we do have in the record here, and I'll stress pages 89, I'm sorry, 39 through 43 of the excerpts of Record Volume 2, this is paperwork from Federal law enforcement agents saying this person is in our VCIT Federal State ATF-directed program. He is being processed. Although he's in State custody, although he's ostensibly under charges of State crimes, he is a VCIT target person we have been preparing to charge with a State crime. And so it's really from that point September 10th forward that the State charges become a ruse because it's from that point forward it's understood this is, in fact, a Federal felony prosecution. And nothing at all really happens on those State charges between September 10th and when they finally announce that he's not under State charges anymore on September 21st. I'm going to reserve the balance of my time if I may. Roberts. Thank you. Good morning. May it please the Court. I am Paul Rood. I'm an assistant United States attorney from Phoenix, Arizona. The Court is focused on key issues in this case, and the government would like to focus the Court on the standard of review, which is clear error on the factual findings. The appellant wishes to claim that there is a ruse and or collusion because that is the only way that the speedy trial clock can be triggered prior to. As I understand this argument, or at least one variation of this argument, it is as soon as the decision has been made that this is going to be a Federal prosecution and not a State prosecution. Not a tentative decision, but a real decision. As soon as that decision is made, any State imprisonment thereafter doesn't count for your purposes. That is to say, as soon as that decision is made, the speedy trial act clock runs. How do you respond to that argument? Well, it's somewhat difficult to respond to that in terms of when the decision is made. The ATF's officer cannot make that decision. There are only the United States Attorney's Office can accept the case for prosecution and then present it either by way of indictment or by way of complaint either to a magistrate or a grand jury. It was certainly made by September 21st, right? On September 21st, one could initially say, well, it sounds like the Federal government asked the State authorities to hold him from the 21st until the 24th. The problem with that is that the clear factual finding by the district court is that the defendant's last State charges, specifically the gun charges in which he was originally arrested on September 27th of 2007, were not dismissed until the 26th day of September. All right. But in terms of what Judge Fletcher was asking you, i.e., when was there a final decision made, it might have been murky before that, but it was certainly made by September  Well, the problem is the Adams case seems to be the threshold. It says that 3161 has triggered only one event, and that is the arrest by Federal authorities on either complaint or an information. That did not occur in this case. Except the collusion idea, another way of saying it is, however, if the State is holding the prisoner on behalf of the United States, I think that may trigger the – that may start the clock to run. This Court has certainly said that the arrest is not the only thing that can trigger the Speedy Trial Act. It has indicated that if there's a clear finding that there's a ruse or collusion between the parties to – with only one effect or desired effect, and that is to deny the Speedy Trial Act. Whatever the State may have thought, if the Feds tell the State to hold the – to wreck them, essentially to hold them for us, isn't that arresting them? It's obtaining for us. If you have that, if you establish that as a clear record, that would be a strong  But I thought we did as of September 21st. I'm sorry? I thought that's what happened on September 21st. Now, it appears that the State may have had its own reasons for holding them as well, but in terms of the intentions of the Feds, the Feds said on September 21st, hold them for three days for us. Well, the reality is that the fact that there is a Federal indictment or a Federal complaint does not trigger the Speedy Trial Act if that individual is not in Federal custody, has not been arrested. Why isn't he in Federal custody if the Feds are dictating that he be in custody? No. What I'm saying is just the filing of those documents does not trigger the Speedy Trial Act under the case law. What triggers the beginning of that 30-day clock is the actual physical arrest of the defendant. All right. Let's get a little hypothetical here. Suppose what had happened was the Federal, whoever it was, I don't know if it was the prosecutors or whomever, said to the State jail officials, hold them until Monday for us, and we'll come pick them up on Monday. Correct. Suppose that had actually happened.  We need more time to process it. Suppose that had happened. Then would we say that from the 21st on he was in Federal custody? You would still have the burden of establishing that it was a ruse or collusion, that that would be. No, no. I thought there were two things. One is a ruse or collusion, but the other is whether he was under Federal arrest. Well, if it pleases the Court, the case law seems to be quite clear that it is only the Federal arrest that triggers the running of the clock. I understand that. I'm asking you whether it would have been a Federal arrest. No. If the State had been ready to release him on Friday, but the Fed said, hold him until Monday, and then we'll come get him. It would be the government's position that he was not physically arrested until the government actually picked him up. That can't be right. Well, that is our position, because the case law seems to say that absent a ruse or collusion to deny, to deny an individual his speedy trial. Ruse or collusion may mean to have a special meaning here. I'm not sure that it requires bad faith on the part of either the State or on the part of the United States government, because it seems to me that if the State is holding someone on behalf of the Federal government and on the instruction of the Federal government, that should be enough to constitute an arrest for the purpose of the Speedy Trial Act. I don't think I need the bad faith that ruse and collusion ordinarily would suggest. Do you agree with me that if I were to say that if the Federal government is to say to the State, please hold him on our behalf, and let's have it be longer than three days, let's have it be a month, and at the end of the month, please hand him over to us, you're saying that that period doesn't count at all? If there's a factual finding in a hearing that it was done for the purposes of allowing the Federal government to, quote, unquote, catch up to the case or to file the case, and that there was collusion between the parties to deny the case, then what is the difference?    If it's a case that's been done because there was no room in the Federal prison, but it was still at the direction of the Federal government, what difference does it make where he's being held if he's being held in the direction of the Federal government? Well, the difference is, again, going back to what triggers the Speedy Trial Clause. If you look at the Benitez case, Federal agents were the victims in that case. They were arrested by State authorities. The State authorities did not release the names of the actual victims, that being Federal agents, because the Federal investigation was ongoing. In fact, the preliminary hearing on the matter was continued for two weeks, specifically so that the Federal government apparently could close out its operation, its drug operation, and then bring indictments. The Court did not find that even though the parties, specifically the State authorities and the Federal authorities, talked back and forth on many occasions, did not find although it was disturbed by it, did not find that that action triggered the Speedy Trial Clause. But the hypotheticals we're trying to give you, which are fairly close to what happened here, except for this strange business about they had to do more paperwork, indicate that there's nothing murky about it, i.e., that the Federal government specifically says, hold him for us. Hold him until the 24th, and we'll pick him up. Right. Well, on the 24th, he was not released. I understand that, which is why I made it a hypothetical. But suppose he was released. Suppose he was held and released on the 24th? Yeah. So what you're saying is that the time actually began to run on the 21st? That's the question. If that's the factual finding, that the only reason that that this individual was being held in State custody on the 21st of September was to accommodate the Federal authorities to deny him his Speedy Trial rights? No, no, no. The last part I'm not adding in. I don't know why that matters. That's what I'm trying to understand. Because that's what the case law says. How different should it make that he was being done to avoid anything as opposed to he was under or he was being held in custody because the Federal government said so? Well, when you start with Adams, Adams says the arrest triggers the Speedy Trial clock. To find some other event triggering that 30-day clock, this Court has held that there must be a ruse or collusion, and the purpose of that is to deny a defendant his fundamental rights under the Speedy Trial Act. That's what must be found. Simply put, the district court after the hearing did not find those facts existed which would allow a finding that there was a ruse or collusion to deny him his Speedy Trial Act rights. In fact, the district court found that the clock did not begin to run until September 28th of 2007. I have nothing further. Okay. Thank you very much. You've saved a little time. Now, we've had some nice hypotheticals, but they're not your case. That is, yes, he's held, at least the government asked that he be held over the weekend. But then when they say they want him, the state still keeps him. So you don't have this nice little thing of, well, during the entire period he's being held on behalf of the United States government. It may very well be, and I think a permissible inference by the district judge, that even if the Federal Government had said, hand him over to us now, before the weekend, the state still would have said, well, sorry, we're going to do paperwork. I don't know what was about that paperwork that, you know, that it couldn't have been, that it could have been avoided if they had asked for him a couple of days earlier. Your Honor, there's no indication in the record how the month or so that the state already had to do paperwork wasn't sufficient for paperwork. But I think there's an important point, and I think Judge Michael, who dissented from the Fourth Circuit Woolfolk decision, which was cited below and is cited in the briefs, made a good point when he said if someone's kept in state custody after the state charges are dispensed with, there's two options. And as a Federal detainer, there's two options. He's being kept because of the Federal detainer, or he's being kept unlawfully. No. But isn't the problem that they weren't trapped? I'm sorry? Isn't the problem that they were not trapped? I'm talking about after September 21. Even after September 21. I thought the paperwork meant we haven't yet dropped it. No. We were going to drop it, but we haven't actually dropped it. No, Your Honor. The record is clear on this that the finding was that the all the state charges were lifted as of September 21, but then the State said something to the Feds about there was still paperwork remaining after, between September 21 and September 20. Do you have any idea what that means? Is there any record on that? There's no indication in the record as to what that means. It may be appropriate in this case to remand for further fact-finding. The record is fairly thin as far as what all this means. Where in the record does it say that the charges were dropped on the 21st, as opposed to they were made a decision to drop them? Well, there's a series of factual findings that the district court makes, and he runs through them, and if you go to page 90 of Volume II of my excerpts of record, lines 10 through 13, it says, this is a finding the district court makes. On September 21, the state court informed ATF that the defendant had resolved the DUI warrant that had been outstanding and that he was due to be released from any pending state charges. So essentially, the court's finding here is that Mr. Amicus Castillo was due to be And then if you keep on reading, there's references to apparently the state claiming some paperwork problems. What about this other finding he makes, that after his arrest, those state charges were not finally resolved until the dismissal on September 26? Well, the formal dismissal, according to the findings that I just cited, did not was not, according to the state, something that necessitated his further custody. He was due to be released September 21, but the formal dismissal took place later. But I thought there's a finding that between September 21 and September 28, the defendant could not have been picked up by the federal authorities because state authorities were continuing to process his release to federal custody. Right. The first state that he could have been picked up was September 28. Right. And I understood that processing reference to be a reference to the paperwork, apparently. And then he makes this finding. I cannot conclude that the defendant's detention on these state charges was a ruse for the purposes of denying his speedy trial rights or that the federal authorities were acting with the intent to deny those rights. I don't find that as a matter of fact. And we do argue that's clearly erroneous, but I want to get back to the argument that that's clearly erroneous goes to the federal trial clock, the speedy trial clock starting on September 10. Even if you're not accepting that, I do want to stress that I think the panel is quite right to say that the ruse is not required to show a Speedy Trial Act violation as of September 21 when he's kept in custody until September 28. There's no requirement of a ruse because from that point forward, he's being held in custody on the federal detainer. And under the case law that we cited in the brief, when one jurisdiction holds somebody in custody on a detainer from another jurisdiction, it is acting as that other jurisdiction's agent. Kagan. But the charge of the findings seem to be to the contrary. The finding is that the state charges were not finally resolved until their dismissal, the dismissal of the weapons charge on September 26. And we would have to find that clearly erroneous. And I would agree with your premise, but I don't agree with your fact. Well, I would disagree with that simply because the Court also found that the State had declared this person, Mr. Enriquez Castillo, due to be released. Well, you're pressing pretty hard on that language, the due to be released. It says the next day, and this is the Court, the next day, September 21, the State Court informed ATF that the defendant had resolved the DUI warrant that had been outstanding and that he was due to be released from any State pending charges any pending State charges. I'm not sure whether I should be parsing the language this carefully, but the Court doesn't say, and that he was due to be released on September 25th, 21st. That is to say, due to be released may mean that, okay, we've cleared the groundwork so that that's out of the way, but it doesn't mean necessarily we will release him on the 21st. In other words, you're suggesting it could mean due to be released at some future date when, yeah. That's a possible construction of the language. And as I read the rest of the findings by the district court, that construction may be what he had in mind when he said that. Well, Your Honor, it makes sense looking at that passage. But if you look at the whole course of argument, the argument was pressed very hard by my colleague, Mr. Mayer, below. And Mr. Mayer made it very clear he was arguing about September 21st through September 28th. So it would have been very unusual for the judge to have given that meaning to what he said in light of the course of the argument. But it's pretty clear the State was holding him for its own purposes after the 24th. Well, you know, there is the argument. You might disagree with their purposes. You might say, what do you mean, paperwork? Couldn't he have done that earlier? But it sounds as though pretty clearly the State was doing it for its own purposes, and that's what the district court found. There is the fact that the feds asked for him earlier than the State agreed to hand him over. But the point is, as Judge Michael pointed out in the Fourth Circuit, there's no legal warrant to hold somebody just because you want to do some paperwork.  Thank you, Your Honor. Well, that may be, but that's not the issue that was raised here, right? Well, that goes to the fact that, as you point out, he's really being held for the Federal Government at that point. The State may have paperwork it should have done a month and a half earlier, but they're really holding him. They have a legal warrant to do that because of a Federal detainer. Okay. Thank you, Your Honor. Thank you for a helpful argument. The case of United States v. Enrique Castillo is submitted for decision.
judges: Tashima, Fletcher, Berzon